JASON E. MURTAGH (SBN 294830)
jason.murtagh@bipc.com
MARY R. HACKETT (SBN 326482)
mary.hackett@bipc.com
KEVIN MAY (SBN 324836)
kevinmay@bicp.com
BUCHANAN INGERSOLL & ROONEY LLP
One America Plaza
600 West Broadway, Suite 1100
San Diego, CA 92101
Telephone: 619 239 8700
Fax:        619 702 3898

Attorneys for Defendants

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CELINA ZABALA, an individual, | Case No.: |
| Plaintiff, | **DEFENDANTS' NOTICE OF REMOVAL** |
| vs. | |
| WALMART, INC., a Delaware corporation; WAL-MART ASSOCIATES, INC., a Delaware corporation; DONALD SHUGART, an individual; ELIZABETH DE GRACIA, an individual; and DOES 1-100, inclusive, | |
| Defendants. | Removal Filed:     October 24, 2022<br>State Action Filed:  May 10, 2022 |

**NOTICE OF REMOVAL FROM STATE COURT**

# TABLE OF CONTENTS

I.      STATEMENT OF JURISDICTION ................................................................. 1

II.     VENUE ........................................................................................................... 1

III.    COMPLIANCE WITH STATUTORY REQUIREMENTS ............................. 2

        A.    Service On The State Court ................................................................ 2

        B.    Pleadings, Process, And Orders ......................................................... 2

        C.    Removal Is Timely ............................................................................. 3

        D.    All Defendants Join In Removal ........................................................ 3

        E.    No Admission ..................................................................................... 4

IV.     ORIGINAL DIVERSITY JURISDICTION PURSUANT TO 28 U.S.C.
        § 1332(A) ....................................................................................................... 4

        A.    The Citizenship Of Plaintiff Is Diverse From That Of Defendants .......... 4

        B.    Citizenship Of Doe Defendants Should Be Disregarded ..................... 5

        C.    Citizenship Of "Sham" Defendants Should Be Disregarded ............... 6

              1.    Plaintiff's Harassment Claims Fail as to "Sham" Defendants ....... 8

              2.    Plaintiff's Intentional Infliction of Emotional Distress (IIED)
                    Claims Fail as to "Sham" Defendants .............................................. 9

              3.    The Individual Defendants' Conduct About Which Plaintiff
                    Complains Is Simply Personnel Management ............................. 10

              4.    Plaintiffs' IIED Claims Are Preempted by the Workers'
                    Compensation Act ....................................................................... 12

              5.    Managerial Privilege Precludes Plaintiff's Claims Against the
                    "Sham" Defendants ..................................................................... 13

V.      THE AMOUNT IN CONTROVERSY EXCEEDS $75,000 ........................... 14

NOTICE OF REMOVAL FROM STATE COURT

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Akers v. Cty. Of San Diego*
    (2002) 95 Cal. App. 4th 1441 ...............................................................19

*Angus v. Shiley Inc.*
    (3d Cir. 1993) 989 F.2d 142 ...............................................................15

*Anthony v. Sec. Pac. Fin. Servs., Inc.*
    (7th Cir. 1996) 75 F.3d 311 ...............................................................15

*Aucina v. Amoco Oil Co.*
    (S.D. Iowa 1994) 871 F. Supp. 332 .............................................19, 20

*Bank of Calif. v. Twin Harbors Lumber Co.*
    (9th Cir. 1972) 465 F.2d 489 ...............................................................15

*Bihun v. AT&T Info. Servs., Inc.*
    (1993)13 Cal. App. 4th 976, 995, overruled on other grounds by
    *Lakin v. Watkins Assoc. Indus.* (1993) 6 Cal.4th 644, 663................17

*Brady v. Mercedes-Benz USA, Inc.*
    (N.D. Cal. 2002) 243 F. Supp. 2d 1004................................................18

*Chavez v. JPMorgan Chase & Co.*
    (9th Cir. 2018)888 F.3d 413 ...............................................................18

*Cole v. Fair Oaks Fire Prot. Dist.*
    (1987) 43 Cal. 3d 148 ...........................................................................12

*Dart Cherokee Basin Operating Co., LLC v. Owens*
    (2014) 135 S. Ct. 547..............................................................................1

*Davenport v. Mut. Ben. Health & Acc. Ass'n*
    (9th Cir. 1963) 325 F. 2d 785 ...............................................................19

*Ethridge v. Harbor House Rest.*
    (9th Cir. 1988) 861 F.2d 1389 ...............................................................5

*Farias v. Bexar Cnty. Bd. of Trs. for Mental Health Retardation Servs.*
    (5th Cir. 1991) 925 F.2d 866 .................................................................6

ii

*Fisher v. San Pedro Peninsula Hosp.*
(1989) 214 Cal. App. 3d 590 ................................................................. 8

*Flannery v. Prentice*
(2001) 26 Cal.4th 572 ........................................................................ 19

*Fritsch v. Swift Transp. Co. of Ariz.*
LLC (9th Cir. 2018) 899 F.3d 785 ...................................................... 18

*Galt G/S v. JSS Scandinavia*
(9th Cir. 1998) 142 F.3d 1150 ............................................................ 15

*Gardenhire v. Hous. Auth. of the City of Los Angeles*
(2002) 85 Cal. App. 4th 236 .............................................................. 17

*Greenwald v. Bohemian Club, Inc.*
(N.D. Cal. June 4, 2008, No. C 07-05261 WHA) 2008 WL 2331947 .............. 12

*Hackmon v. City of Los Angeles*
No. BC189418, 2001 WL 1860540 ....................................................... 19

*Hertz Corp. v. Friend*
(2010) 130 S.Ct. 1181 ......................................................................... 5

*Imperial Ice v. Rossier*
(1941) 18 Cal. 2d 33 .......................................................................... 13

*Janis v. Health Net, Inc.*
(9th Cir. 2012) 472 F. App'x 533 ......................................................... 1

*Janken v. GM Hughes Electronics*
(1996) 46 Cal. App. 4th 55 ................................................................ 11

*Kacludis v. GTE Sprint Commc'ns Corp.*
(N.D. Cal. 1992) 806 F. Supp. 866 ............................................... 12, 13

*Kantor v. Wellesley Galleries, Ltd.*
(9th Cir. 1983) 704 F.2d 1088 ............................................................. 4

*Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*
(C.D. Cal. 2002)199 F. Supp. 2nd 993, 1001 ....................................... 14

*Kohn v. Cty. of Los Angeles*
(Cal. Superior June 28, 2001, No. BC212273) 2001 WL 1720226 ................ 19

**NOTICE OF REMOVAL FROM STATE COURT**

*Korn v. Polo Ralph Lauren Corp.*
(E.D. Cal. 2008) 536 F. Supp. 2d 1199 .............................................................. 14

*Kroske v. U.S. Bank Corp.*
(9th Cir. 2005) 432 F.3d 976, *cert denied*, 127 S. Ct. 157 (2006) .................... 18

*Light v. Dep't of Parks & Recreation*
(2017) 14 Cal. App. 5th 75, 221 Cal. Rptr. 3d 668 .............................................. 9

*Lowe v. Cal. Res. Agency*
(1991)1 Cal. App. 4th 1140 .............................................................................. 17

*McCabe v. Gen. Foods Corp.*
(9th Cir. 1987) 811 F.2d 1336 ...................................................................... 6, 14

*Morris v. Princess Cruises, Inc.*
(9th Cir. 2001) 236 F.3d 1061 .............................................................................. 6

*Patel v. Nike Retail Services, Inc.*
(N.D.Cal 2014) 58 F. Supp. 3d 1032, 1037 ...................................................... 15

*Pollard v. E.I. du Pont de Nemours & Co.*
(2001)532 U.S. 843 ............................................................................................ 17

*Rabago-Alvarez v. Dart Indus., Inc.*
(1976) 55 Cal. App. 3d 91 ................................................................................ 16

*Redfield v. Ins. Co. of N. Am.*
(9th Cir. 1991) 940 F.2d 542, overruled on other grounds, *Dotson v.
United States* (5th Cir. 1996) 87 F.3d 682 ...................................................... 17

*Richmond v. Allstate Ins. Co.*
(S.D. Cal. 1995) 897 F. Supp. 447 .................................................................... 14

*Rippee v. Boston Market Corp.*
(S.D. Cal. 2005) 408 F. Supp. 2d 982 .............................................................. 14

*Ritchey v. Upjohn Drug Co.*
(9th Cir. 1998) 139 F.3d 1313, cert. denied (1998) 525 U.S. 963 ...................... 6

*Rivera v. Costco Wholesale Corp.*
(N.D. Cal. July 11, 2008, No. C 08-02202 CW) 2008 WL 2740399 ................ 19

*Robomatic, Inc. v. Vetco Offshore*
(1990) 225 Cal. App. 3d 270, 272 .................................................................... 13

NOTICE OF REMOVAL FROM STATE COURT

*Salveson v. W. States Bankcard Assoc.*
(9th Cir. 1984) 731 F.2d 1423 ..................................................................5

*Sanchez v. Monumental Life Ins. Co.*
(9th Cir. 1996) 95 F.3d 856, *amended by, rehearing en banc denied by*, 102 F.3d 398 (9th Cir. 1996) ...........................................................15

*Schneider v. Ford Motor Co.*
(9th Cir. 2018)759 Fed. Appx. 699 .........................................................18

*Sheppard v. Freeman*
(1998) 67 Cal. App. 4th 339 ...................................................................13

*Simmons v. PCR Tech.*
(N.D. Cal. 2002) 209 F. Supp. 2d 1029.........................................15, 16, 19

*Smith v. Brown-Forman Distillers Corp.*
(1989)196 Cal. App. 3d 503 ...................................................................16

*Swinton v. Potomac Corp.*
(9th Cir. 2001) 270 F.3d 794, cert. denied, 535 U.S. 1018 (2002) ...................17

*Wanland v. Los Gatos Lodge, Inc.*
(1991) 230 Cal. App. 3d 1507 ................................................................13

**Statutes**

28 U.S.C. § 84(c) .....................................................................................2

28 U.S.C. § 1332 ...................................................................................1, 4

28 U.S.C. § 1332(a) .....................................................................1, 4, 14, 20

28 U.S.C. § 1332(c)(1)................................................................................4

28 U.S.C. § 1391(a) ..................................................................................2

28 U.S.C. § 1441.......................................................................................1

28 U.S.C. § 1441(a) ...............................................................................2, 5

28 U.S.C. § 1446.......................................................................................1

28 U.S.C. § 1446(a) ...............................................................................1, 2

28 U.S.C. § 1446(b)(2)(A)...........................................................................3

v

28 U.S.C. § 1446(d) ................................................................................................. 2

Cal. Civ. Code § 3283 ........................................................................................... 17

Cal. Gov't Code § 12923 ......................................................................................... 8

**Other Authorities**

Cal. Practice Guide: Emp't Litig., § 17:350, Rutter Grp. (2013) ........................... 17

H.R. REP. 112-10, 15-16, 2011 U.S.C.C.A.N. 576, 580 ....................................... 15

**NOTICE OF REMOVAL FROM STATE COURT**

**TO THE UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA, PLAINTIFF CELINA ZABALA, AND HER ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that WALMART, INC., a Delaware corporation and WAL-MART ASSOCIATES, INC., a Delaware corporation ("Defendants") remove the above-captioned action (the "Action") from the California Superior Court for the County of Orange to the United States District Court for the Central District of California pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.

Defendants set forth below "a short and plain statement of the grounds for removal" pursuant to 28 U.S.C. § 1446(a). Defendants will provide evidence to support contested allegations of this pleading as required in response to any challenge to this Court's jurisdiction.[1]

## I.   <u>STATEMENT OF JURISDICTION</u>

1.    This Court has original jurisdiction over this action under 28 U.S.C. § 1332(a) because (a) the amount in controversy exceeds $75,000; and (b) this matter is between citizens of different states within the meaning of that provision, after the citizenship of individual Defendant Donald Shugart ("Defendant Shugart") and individual Defendant Elizabeth DeGracia ("Defendant DeGracia") are disregarded because they were fraudulently joined.

## II.   <u>VENUE</u>

2.    This Action was filed in the Superior Court of the State of California for the County of Orange. Venue properly lies in the United States District Court for the

---

[1]    A removing defendant is only required to provide a "short and plain statement" of the bases for removal and need not present or plead evidentiary detail. *Dart Cherokee Basin Operating Co., LLC v. Owens*, (2014) 135 S. Ct. 547, 551 *see also Janis v. Health Net, Inc.* (9th Cir. 2012) 472 F. App'x 533, 534 ("Nothing in 28 U.S.C. § 1446 requires a removing defendant to attach evidence of the federal court's jurisdiction to its notice of removal. Section 1446(a) requires merely a 'short and plain statement of the grounds for removal.' Moreover, we have observed that 'it is clearly appropriate for the district courts, in their discretion, to accept certain post-removal [evidence] as determinative of the [jurisdictional requirements].'"). As the Supreme Court has clarified, "[i]f the plaintiff contests the defendant's allegation . . . both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Dart Cherokee*, 135 S. Ct. at 553-554.

**NOTICE OF REMOVAL FROM STATE COURT**

1  Central District of California pursuant to 28 U.S.C. §§ 84(c), 1391(a), and 1441(a).

2  **III.    COMPLIANCE WITH STATUTORY REQUIREMENTS**

3       3.      In accordance with 28 U.S.C. § 1446(a), true and correct copies of all

4  pleadings, process, and orders in the state court file (which consist of Plaintiff's

5  Summons and Complaint) are attached to the Declaration of Mary Hackett as Exhibit

6  A-C.

7       **A.    Service On The State Court**

8       4.      Pursuant to 28 U.S.C. § 1446(d), contemporaneously with the filing of

9  this Notice of Removal in the United States District Court for the Central District of

10  California, written notice of such filing will be given by the undersigned to Plaintiff's

11  Counsel of Record and a copy of the Notice of Removal will be filed with the Clerk of

12  the Orange County Superior Court.

13       **B.    Pleadings, Process, And Orders**

14       5.      On May 10, 2022, Plaintiff Celina Zabala filed an action in the Superior

15  Court of the State of California for the County of Orange entitled *CELINA ZABALA*

16  *(an individual) vs. WALMART INC. (a Delaware Corporation); WAL-MART*

17  *ASSOCIATES, INC. (a Delaware Corporation); DONALD SHUGART (an individual);*

18  *ELIZABETH DE GRACIA (an individual); and DOES 1-100, inclusive, Defendants*.

19  Case No. 30-2022-01258943-CU-WT-CJC. In accordance with 28 U.S.C. § 1446(a), a

20  true and correct copy of the Summons and Complaint filed in the Orange County

21  Superior Court is attached as Exhibit A.  The Complaint alleges seventeen causes of

22  action, including discrimination on the basis of gender in violation of FEHA;

23  harassment on the basis of gender in violation of FEHA; discrimination on the basis of

24  pregnancy in violation of FEHA; harassment on the basis of pregnancy in violation of

25  FEHA; discrimination on the basis of race in violation of FEHA; harassment on the

26  basis of race in violation of FEHA; sexual harassment on violation of FEHA;

27  discrimination on the basis of disability in violation of FEHA; harassment on the basis

28  of disability in violation of FEHA; failure to provide reasonable accommodation in

**NOTICE OF REMOVAL FROM STATE COURT**

violation of FEHA; failure to engage in the interactive process; retaliation for engaging in a protected activity in violation of FEHA; retaliation for taking CFRA/FMLA leave in violation of FEHA; failure to prevent discrimination, harassment and retaliation in violation of FEHA; wrongful termination of employment in violation of public policy; whistleblower retaliation in violation of Labor Code, section 1102.5; and intentional infliction of emotional distress. The Complaint seeks damages in the form of general and special damages, exemplary damages, and attorney's fees. [Complaint, Prayer ¶¶ 1-4.]. The Complaint also seeks punitive damages. [Complaint, ¶¶ 24, 36, 43, 50, 56, 67, 74, 82, 88, 94, 102, 108, 115, 120, 129, 134, 142, and 148.]

6.     Service of the Summons and Complaint upon Defendants was made on September 23, 2022 [Declaration, ¶ 2.] A true and correct copy of the Proof of Service is attached as Exhibit B.

7.     No further proceedings have occurred in the matter now pending before the Orange County Superior Court. [Declaration, ¶ 5.]

**C.     <u>Removal Is Timely</u>**

8.     This removal is timely. Service of the Summons and Plaintiff's Complaint was made on Defendants on September 23, 2022 [Declaration, ¶ 2.] This removal is made within 30 days of the service of the Action on Defendants.

**D.     <u>All Defendants Join In Removal</u>**

9.     All Defendants are represented by the same counsel here, and all Defendants consent to this removal. [Declaration, ¶ 6.]

10.    For the reasons set forth below, Defendant Shugart and Defendant DeGracia were fraudulently joined and are sham defendants, and therefore their consent to removal is not required. *See* 28 U.S.C. § 1446(b)(2)(A) (requiring consent of all defendants "properly joined"). However, for the avoidance of doubt, should such consent be required, both Defendant Shugart and Defendant DeGracia would consent to removal.

**NOTICE OF REMOVAL FROM STATE COURT**

1

2        **E.    No Admission**

3        11.    By filing this Notice of Removal, Defendants do not admit any liability,

4   do not concede the accuracy of Plaintiff's allegations, and do not concede that Plaintiff

5   is entitled to any of the relief sought in the Complaint, or any relief of any kind.

6   **IV.   ORIGINAL DIVERSITY JURISDICTION PURSUANT TO 28 U.S.C.**

7        **§ 1332(A)**

8        12.    This Court has original jurisdiction over the Action pursuant to 28 U.S.C.

9   § 1332(a). Under Section 1332, federal courts have original jurisdiction of "all civil

10  actions where the matter in controversy exceeds the sum or value of $75,000, exclusive

11  of interest and costs, and is between . . . citizens of different states . . ." 28 U.S.C.

12  § 1332(a)(1).

13       13.    Both requirements are satisfied here because diversity of citizenship exists

14  between Plaintiff and Defendants, after the citizenship of individual Defendant Donald

15  Shugart ("Defendant Shugart") and individual Defendant Elizabeth DeGracia

16  ("Defendant DeGracia") are disregarded because they were fraudulently joined, and

17  Plaintiff's contentions place a sum in excess of $75,000 in controversy, exclusive of

18  interest and costs.

19       **A.    The Citizenship Of Plaintiff Is Diverse From That Of Defendants**

20       14.    For diversity purposes, an individual is a "citizen" of the state in which he

21  or she is domiciled. *See Kantor v. Wellesley Galleries, Ltd.* (9th Cir. 1983) 704 F.2d

22  1088.

23       15.    Here, Plaintiff alleges that "[p]laintiff Celina Zabala is, and at all times

24  mentioned in this Complaint was, a resident of the County of Orange, California."

25  [Complaint ¶ 1.]

26       16.    For diversity purposes, a corporation "shall be deemed a citizen of any

27  State by which it has been incorporated and of the State where it has its principal place

28  of business." 28 U.S.C. § 1332(c)(1). To determine a corporation's principal place of

4

**NOTICE OF REMOVAL FROM STATE COURT**

1  business, courts apply the "nerve center" test, which deems the principal place of

2  business to be the state in which the corporation's officers direct, control, and

3  coordinate the corporation's activities. *See Hertz Corp. v. Friend* (2010) 130 S.Ct.

4  1181, 1192. A corporation's principal place of business will typically be where the

5  corporation maintains its headquarters. *Id.*

6      17.    Plaintiff alleges that "Defendant Walmart Inc., is a Delaware

7  Corporation." [Complaint ¶ 2a.]. Plaintiff also alleges that "Defendant Wal-Mart

8  Associates, Inc. is a Delaware Corporation." [Complaint ¶ 2b.]

9      18.    Plaintiff correctly alleges that "Walmart Inc." and "Wal-Mart Associates,

10  Inc." are corporations organized and existing under the laws of the state of Delaware.

11  Their principal place of business is located in Bentonville, Arkansas, and their

12  executive, administrative, and financial offices are also located in Bentonville,

13  Arkansas. Additionally, the vast majority of Walmart corporate decisions – including

14  operational, executive, administrative, and policymaking decisions – are made at the

15  Bentonville, Arkansas headquarters. Accordingly, the Walmart entities are citizens of

16  Delaware (incorporated) and Arkansas (principal place of business). They were not

17  citizens of California at the time the State Court Action was filed and are not citizens

18  of California now.

19          **B.    Citizenship Of Doe Defendants Should Be Disregarded**

20      19.    The citizenship of the Doe Defendants should be disregarded for diversity

21  purposes. Plaintiff's Complaint names as Defendants "Does 1-100." Pursuant to 28

22  U.S.C. § 1441(a), the citizenship of defendants sued under fictitious names must be

23  disregarded for the purpose of determining diversity jurisdiction.    Further, to

24  Defendants' knowledge, no fictious defendant has been served, and therefore, none

25  need join in the Notice of Removal. *See Salveson v. W. States Bankcard Assoc.* (9th

26  Cir. 1984) 731 F.2d 1423, 1429 ("Our circuit rule is that a party not served need not be

27  joined; the defendants summoned can remove by themselves."), superseded by statute

28  on other grounds in *Ethridge v. Harbor House Rest.* (9th Cir. 1988) 861 F.2d 1389,

5

**NOTICE OF REMOVAL FROM STATE COURT**

1   1392 n.3.

2   **C.   Citizenship Of "Sham" Defendants Should Be Disregarded**

3   20.   The citizenship of individual Defendant Shugart and individual Defendant

4   DeGracia should be disregarded for diversity purposes because they are "sham"

5   defendants. The Court may properly disregard a non-diverse defendant if it is

6   determined that that party's joinder is a "sham," such that no possible cause of action

7   can be established against that party.  *See Morris v. Princess Cruises, Inc.* (9th Cir.

8   2001) 236 F.3d 1061, 1067 (fraudulent joinder provides "exception to the requirement

9   of complete diversity"); *Farias v. Bexar Cnty. Bd. of Trs. for Mental Health*

10  *Retardation Servs.* (5th Cir. 1991) 925 F.2d 866, 871; *McCabe v. Gen. Foods Corp.*

11  (9th Cir. 1987) 811 F.2d 1336, 1339 (joinder of resident defendant was fraudulent

12  where plaintiff failed to state any cause of action against resident defendant).

13  21.   Defendants do not need to show that the joinder of a non-diverse

14  defendant was for the *purpose* of preventing removal. Rather, the question is simply

15  whether there is any possibility that the plaintiff will be able to establish liability against

16  the party in question. *See Ritchey v. Upjohn Drug Co.* (9th Cir. 1998) 139 F.3d 1313,

17  1318-1319, cert. denied, (1998) 525 U.S. 963. Additionally, in an employment matter

18  where state law clearly provides that the supervisor is an improper defendant, the case

19  may be removed to federal court, ignoring the individual as a sham defendant. *McCabe*,

20  811 F.2d at 1339.

21  22.   Here, Plaintiff's claims (harassment and intentional infliction of

22  emotional distress) against Defendant Shugart are based on two facts: (1) his allegedly

23  being present at a meeting where Plaintiff was presented with termination papers in

24  2018 [Complaint ¶ 13],[2] and (2) that he "highlighted" a customer *compliment* made

25  about Plaintiff when she was presented with two awards [Complaint ¶ 16]. This is the

26  totality of factual allegations against Defendant Shugart in the whole Complaint.

27

28  [2] Plaintiff alleges that she was terminated most recently in 2020 but was previously terminated in 2018. Of course, the applicable statute of limitations has expired for any causes of action related to the 2018 termination.

6

1

2      23.    Defendant DeGracia is specifically mentioned only in one paragraph of

3  the Complaint. Plaintiff states that "[o]n November 29, 2018, Zabala was called to a

4  meeting with Store Manager Elizabath DeGarcia[3] (hereinafter "DeGarcia") and Front-

5  End Coach Donald Shugart (hereinafter "Shugart") and presented with termination

6  papers for excessive absences and/or tardies." At the end of the paragraph, after

7  Plaintiff explained her excessive absences by stating that she had a panic attack

8  disorder, Plaintiff states that "De Garcia responded, stating 'work is work...you still

9  have to come.'" [Complaint ¶ 13.] Never does Plaintiff mention Defendant DeGracia

10  again.

11      24.    Plaintiff does allege a handful of facts against someone named

12  "Elizabeth": (1) she reported to Store Manager "Elizabeth" "incidents of sexual

13  harassment" when another employee "watched as she bent over" to pull a Christmas

14  tree box forward, and another manager "inappropriately staring" at her [Complaint ¶ 9];

15  (2) "Elizabeth" was "very dismissive about Zabala's complaints and said work

16  schedules were made based upon customer traffic within the store" and Plaintiff

17  believes "Elizabeth" did not "like her and in retaliation for her complaints." [Complaint

18  ¶ 17]. There is no allegation that "Elizabeth" is, in fact, Defendant DeGracia. However,

19  in an abundance of caution, Defendants discuss these facts (in addition to the ones

20  alleged against Defendant DeGracia above) as the basis for the claims asserted against

21  Defendant DeGracia in the analysis below.

22      25.    As discussed in more detail below, Plaintiff does not allege facts that

23  would show that either Defendant Shugart or Defendant DeGracia harassed Plaintiff

24  on any basis (gender, pregnancy, race, sex, or disability) or intentionally inflicted

25  emotional distress on Plaintiff. Rather, these are "sham" defendants and should be

26  dismissed for purposes of diversity jurisdiction.

27

28  _____
[3] The Complaint uses "Elizabeth DeGracia" in the caption but refers to "Elizabath DeGarcia" in the factual allegations. Defendants presume this is merely a typographical error.

7

**NOTICE OF REMOVAL FROM STATE COURT**

### 1.    Plaintiff's Harassment Claims Fail as to "Sham" Defendants

26.    Plaintiff does not allege a single fact as to either individual Defendant that would indicate harassment on any level, on any protected basis.

27.    "The elements [of a prima facie claim of hostile-environment harassment] are: (1) plaintiff belongs to a protected group; (2) plaintiff was subject to unwelcome harassment; (3) the harassment complained of was based on [the protected category]; (4) the harassment complained of was sufficiently pervasive so as to alter the conditions of employment and create an abusive working environment; and (5) respondeat superior." *Fisher v. San Pedro Peninsula Hosp.* (1989) 214 Cal. App. 3d 590, 608 (footnote omitted).

28.    The California Legislature has proclaimed that "a single incident of harassing conduct is sufficient to create a triable issue regarding the existence of a hostile work environment," provided that such conduct "has unreasonably interfered with the plaintiff's work performance or created an intimidating, hostile, or offensive working environment." Cal. Gov't Code § 12923.

29.    Plaintiff simply alleges that Defendant Shugart was present at a 2018 termination meeting and conveyed a compliment at an awards' presentation. [Complaint ¶ 13, 16.] She does not allege that Defendant Shugart harassed her, or that she complained of him harassing her, or that any harassment was so pervasive as to alter her conditions of employment. Put simply, there are no facts that support any of the elements of the claims.

30.    Plaintiff likewise fails to allege that Defendant DeGracia harassed her. She states that Defendant DeGracia told her that she still had to come to work and was present at her termination meeting. She also states that she reported some behavior to "Elizabeth," who refused to investigate, was dismissive, and did not like her. [Complaint ¶ 9, 17.]

31.    Plaintiff does not allege that Defendant DeGracia or "Elizabeth" harassed her, that she complained of this harassment, or that the harassment was so pervasive as

1  to alter her conditions of employment. None of the elements of the claim are satisfied
2  or even alleged.

3      32.    Plaintiff goes on to repeat the same conclusory statements in each cause
4  of action related to harassment for every Defendant. Specifically, Plaintiff states
5  "[d]efendants' conduct, as alleged, violated FEHA, Government Code section 12900,
6  et seq., and defendants committed unlawful employment practices, including by the
7  following, separate bases for liability: Harassing plaintiff and/or creating a hostile work
8  environment, in whole or in part on the basis of plaintiff's (*protected status inserted*
9  *here*) and/or other protected characteristics, in violation of Government Code section
10 12940(j)." [Complaint ¶ 39, 52, 63, 70, 90, 111.] Plaintiff never ties any fact to any
11 element of the claim and makes blanket conclusory assertions that do not begin to cross
12 the threshold of stating a legitimate claim against the individual Defendants.

13            **2.    Plaintiff's Intentional Infliction of Emotional Distress (IIED)**
14            **Claims Fail as to "Sham" Defendants**

15     33.    To prevail on her claim for IIED, Plaintiff must show: "(1) extreme and
16 outrageous conduct by the defendant with the intention of causing, or reckless disregard
17 of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or
18 extreme emotional distress; and (3) actual and proximate causation of the emotional
19 distress by the defendant's outrageous conduct." *See Light v. Dep't of Parks &*
20 *Recreation* (2017) 14 Cal. App. 5th 75, 101, 221 Cal. Rptr. 3d 668. Critically, to qualify
21 as "outrageous," the conduct must be "so extreme as to exceed all bounds of that
22 usually tolerated in a civilized community." *Id.* (citations omitted).

23     34.    Here, Plaintiff does not plead facts that either individual Defendant
24 engaged in "outrageous conduct," "intentional harm," or that either of the individual
25 Defendants' "outrageous conduct" was the actual or proximate cause of Plaintiff's
26 emotional distress. Thus, Plaintiff has not stated a cause of action for Intentional
27 Infliction of Emotional Distress (IIED) against Defendant Shugart and Defendant
28 DeGracia.

35.     Plaintiff never alleges that any conduct by either Defendant Shugart or Defendant DeGracia was outrageous.

36.     Defendant Shugart is alleged to have complimented Plaintiff and been present at a meeting. Even if Plaintiff had taken the required step of then alleging that these actions were outrageous, that claim would fail every test of law and logic. Issuing a compliment to an employee, and being present at a meeting, are neither outrageous nor the actual or proximate causes of emotional distress. Nor does Plaintiff even claim that any of Defendant Shugart's actions caused her emotional distress.

37.     The same is true for Defendant DeGracia. Plaintiff does not allege that any behavior by Defendant DeGracia or "Elizabeth" was outrageous. Nor does Plaintiff plead any causal connection between DeGracia's (or "Elizabeth's") actions and her emotional distress.

38.     As with the harassment claims, Plaintiff provides only conclusory statements when attempting to allege IIED. She states that "Defendants' discriminatory, harassing, and retaliatory actions against plaintiff constituted severe and outrageous misconduct and caused plaintiff extreme emotional distress." [Complaint ¶ 144.] It is unclear to which "Defendants" she is referring, and she never pleads what actions underly this allegation.

39.     Rather, in search of a causal link, Plaintiff declares "[a]s a proximate result of defendants' extreme and outrageous conduct, plaintiff has suffered and continues to suffer severe emotional distress." [Complaint ¶ 146.] This conclusory statement does not suffice to notify any particular Defendant that any particular behavior caused her distress. This is a mere incantation of a standard, not pleading of facts that could conceivably establish a causal link.

### 3.     The Individual Defendants' Conduct About Which Plaintiff Complains Is Simply Personnel Management

40.     Read charitably, Plaintiff's complaint here pleads that individual Defendants engaged in management decisions and/or managed personnel in their role

as employees of Walmart. This is insufficient under California law, because the management of personnel is not in and of itself "extreme and outrageous." *Janken v. GM Hughes Electronics* (1996) 46 Cal. App. 4th 55, 80. As the court noted in *Janken*:

> An essential element of such a claim is a pleading of outrageous conduct beyond the bounds of human decency. Managing personnel is not outrageous conduct beyond the bounds of human decency, but rather conduct essential to the welfare and prosperity of society. A simple pleading of personnel management activity is insufficient to support a claim of intentional infliction of emotional distress, even if improper motivation is alleged. If management decisions are improperly motivated the remedy is a suit against the employer for discrimination.

*Id.* (internal citations omitted).

41.    Defendant Shugart's alleged actions can only be characterized as personnel management. He was present at a termination meeting. He complimented Plaintiff at a presentation. Nothing here is outside of normal management duties.

42.    Similarly, the complaint alleges that Defendant DeGracia was acting within the bounds of her management role. She allegedly refused to investigate a claim. She was dismissive concerning Plaintiff's alleged complaints. These decisions fall squarely within the role of a manager at a company.

43.    Similarly, Plaintiff complains that "Elizabeth" did not like her. Absent some alleged actions that fall outside of the reasonable bounds of "Elizabeth's" job as a manager, whether she liked or disliked Plaintiff cannot establish a claim as a matter of law in California.

44.    In short, all of the facts alleged by Plaintiff relate exclusively to Defendant Shugart's and Defendant DeGracia's personnel management activity, and they do not reflect outrageous conduct directed at Plaintiff, or intent to cause her distress. Therefore, these allegations are insufficient to form a basis for an IIED claim against the individual Defendants.

**NOTICE OF REMOVAL FROM STATE COURT**

### 4. Plaintiffs' IIED Claims Are Preempted by the Workers' Compensation Act

45. Plaintiff's IIED claims also fail because they are preempted by the exclusivity provisions of California's Workers' Compensation Act ("WCA"). Labor Code § 3600 et seq. Labor Code section 3601 provides that the exclusive remedy for an injured employee against any other employee of the employer acting within the scope of her employment is Workers' Compensation unless the injury is caused by a willful and unprovoked act of aggression or intoxication of the other employee. *See Kacludis v. GTE Sprint Commc'ns Corp.* (N.D. Cal. 1992) 806 F. Supp. 866, 870 (where employee states claim for emotional injury stemming from termination, general rule is that claim is governed exclusively by provisions of California's Workers' Compensation system).

46. Indeed, in *Cole v. Fair Oaks Fire Prot. Dist.* (1987) 43 Cal. 3d 148, the California Supreme Court held that claims for emotional distress caused during the normal course of the employment relationship fall within the exclusive ambit of the WCA:

> [W]hen the misconduct attributed to the employer is actions which are a normal part of the employment relationship, such as demotions, promotions, criticism of work practices, and frictions in negotiations as to grievances, an employee suffering emotional distress causing disability may not avoid the exclusive remedy provisions of the Labor Code by characterizing the employer's decisions as manifestly unfair, outrageous, harassment, or intended to cause emotional disturbance resulting in disability.

43 Cal. 3d at 160. Here, Plaintiff cannot state a legally cognizable cause of action for IIED against Defendant Shugart or DeGracia. Their alleged actions could only be characterized as conduct specifically contemplated by the Court in *Cole* to be part of the employment relationship and subject to the exclusivity of the WCA. Under *Cole*, Plaintiff cannot re-characterize the employment related conduct as outrageous to avoid the exclusive provisions of the Labor Code. *Id.; see also Greenwald v. Bohemian Club, Inc.* (N.D. Cal. June 4, 2008, No. C 07-05261 WHA) 2008 WL 2331947, at *8 ("[t]he

1   clear majority of decisions have held that employee claims alleging negligent conduct

2   of the employer are preempted by workers' compensation"); *Robomatic, Inc. v. Vetco*

3   *Offshore* (1990) 225 Cal. App. 3d 270, 272 (wherein California Court of Appeal ruled

4   that "a workers' compensation proceeding is [plaintiff's] exclusive remedy for

5   negligent infliction of emotional distress ensuing from dismissal of employment.")

6          **5.    Managerial Privilege Precludes Plaintiff's Claims Against the**
           **"Sham" Defendants**
7

8          47.    Although Defendants do not believe that the Court needs to consider this

9   issue in light of the issues discussed above, it is worth mentioning that Defendant

10  Shugart and Defendant DeGracia are subject to a manager's privilege. California law

11  explicitly prohibits employees from suing their former managers and supervisors in tort

12  for merely discharging their employment duties related to personnel actions. *See*

13  *Sheppard v. Freeman* (1998) 67 Cal. App. 4th 339, 342. The manager's privilege

14  applies where a party acts within the course and scope of her employment and protects

15  a manager's right to manage her employees: "If that privilege protects nothing else, it

16  protects a manager's right to manage personnel (including firing and hiring) without

17  fear of independent liability, absent concrete and specific allegations that such actions

18  were entirely for the benefit of the individual." *Kacludis*, 806 F. Supp. at 872 (emphasis

19  in the original*); see also Imperial Ice v. Rossier* (1941) 18 Cal. 2d 33, 36 (existence of

20  malice or ill will by the manager or agent toward the Plaintiff is irrelevant and will not

21  destroy the manager's privilege); *Wanland v. Los Gatos Lodge, Inc.* (1991) 230 Cal.

22  App. 3d 1507, 1522 ("manager need not be acting solely in his or her employer's

23  interest in order to claim the privilege; all that is required is proof that the employer's

24  interest was one of the factors motivating his or her conduct or advice").

25         48.    In this case, Defendant Shugart's actions of complimenting Plaintiff and

26  being present at the termination meeting were part of his personnel duties. The

27  Complaint alleges that Defendant Shugart was a Front-End Coach. [Complaint, ¶ 13.]

28  Therefore, his actions would have been in that capacity and carried out in his

**NOTICE OF REMOVAL FROM STATE COURT**

1 managerial capacity. Nothing alleged goes beyond this scope.

2     49.    The Complaint refers to Defendant DeGracia as a store manager.

3 [Complaint, ¶ 13.] She attended a termination meeting. She may be the "Elizabeth"

4 referred to in the Complaint, and if so, she allegedly did not investigate a matter, was

5 dismissive, and did not like the Plaintiff. None of these are alleged to have fallen

6 outside of the scope of her duties as store manager.

7     50.    Upon finding that the manager's privilege applies, fraudulent joinder

8 should be found. In *McCabe* (cited above), the court applied the manager's privilege

9 and found that the plaintiff failed to state a cause of action against the individual

10 supervisors since they acted in their managerial capacity, Therefore, the court held that

11 the individual defendants were fraudulently joined. 811 F.2d at 1339. Here, because

12 the individual Defendants' alleged actions were carried out in their managerial

13 capacities, they are subject to the managerial privilege, which further supports a finding

14 that the individual Defendants were improperly joined.

15 **V.**    **THE AMOUNT IN CONTROVERSY EXCEEDS $75,000**

16     51.    Section 1332(a) provides that "district courts shall have original

17 jurisdiction of all civil actions where the matter in controversy exceeds the sum or value

18 of $75,000, exclusive of interest and costs, and is between . . . citizens of different

19 states. . . ."

20     52.    This jurisdictional element concerns "what amount is put 'in controversy'

21 by the plaintiff's complaint, not what a defendant will actually owe." *See Korn v. Polo*

22 *Ralph Lauren Corp.* (E.D. Cal. 2008) 536 F. Supp. 2d 1199, 1205 (*quoting Rippee v.*

23 *Boston Market Corp.* (S.D. Cal. 2005) 408 F. Supp. 2d 982, 986). "In measuring the

24 amount in controversy, 'a court must assume that the allegations of the complaint are

25 true and assume that a jury will return a verdict for the plaintiff on all claims made in

26 the complaint.'" *Korn*, 536 F. Supp. 2d at 1205 (quoting *Kenneth Rothschild Trust v.*

27 *Morgan Stanley Dean Witter* (C.D. Cal. 2002)199 F. Supp. 2nd 993, 1001). It includes

28 potential general and special damages, and penalties, as well as attorney's fees if

recoverable by statute or contract. *E.g.*, *Richmond v. Allstate Ins. Co.* (S.D. Cal. 1995) 897 F. Supp. 447, 449-450 and *Simmons v. PCR Tech.* (N.D. Cal. 2002) 209 F. Supp. 2d 1029, 1034.

53.    "[D]efendants do not need to prove to a legal certainty that the amount in controversy requirement has been met. Rather, defendants may simply allege or assert that the jurisdictional threshold has been met." *Patel v. Nike Retail Services, Inc.* (N.D.Cal. 2014) 58 F. Supp. 3d 1032, 1037 (quoting H.R. REP. 112–10, 15–16, 2011 U.S.C.C.A.N. 576, 580) (internal quotation omitted).

54.    If a plaintiff's state court complaint is silent as to the amount of damages claimed, the removing defendant need only establish that it is more probable than not that the plaintiff's claim exceeds the jurisdictional minimum. *Sanchez v. Monumental Life Ins. Co.* (9th Cir. 1996) 95 F.3d 856, 860-861, *amended by, rehearing en banc denied by*, 102 F.3d 398, 404 (9th Cir. 1996). Moreover, all claims can be aggregated to meet the minimum jurisdictional amount. *See Bank of Calif. v. Twin Harbors Lumber Co.* (9th Cir. 1972) 465 F.2d 489, 491; *Angus v. Shiley Inc.* (3d Cir. 1993) 989 F.2d 142, 146 ("the amount in controversy is not measured by the low end of an open-ended claim, but rather by reasonable reading of the value of the rights being litigated"). Defendants need only plausibly allege that the amount in controversy exceeds $75,000. *Id.* at 553 ("The defendant's amount-in controversy allegation should be accepted when not contested by the plaintiff or questioned by the court.").

55.    Economic damages, non-economic damages, general damages, attorney's fees and costs, and punitive damages are all included in determining the amount in controversy. *See Anthony v. Sec. Pac. Fin. Servs., Inc.* (7th Cir. 1996) 75 F.3d 311, 315 (prayer for punitive damages included in determining amount in controversy); *Galt G/S v. JSS Scandinavia* (9th Cir. 1998) 142 F.3d 1150, 1155-56 (prayer for attorney's fees included in determining amount in controversy where potentially recoverable by statute). The Court may examine the nature of the action and the relief sought and take judicial notice of attorney's fee awards in similar cases. *See, e.g., Simmons v. PCR*

*Tech.* (N.D. Cal. 2002) 209 F. Supp. 2d 1029, 1035 (noting that attorney's fees in individual employment discrimination cases often exceed damages). Furthermore, such fees are calculable beyond the time of removal. *Id.*

56.    Here, the amount in controversy exceeds $75,000. Although, the Complaint does not include a specific *ad damnum* (other than to say that damages will exceed $25,000),[4] the damages sought will exceed $75,000. Plaintiff's Complaint sets forth seventeen causes of actions alleging economic damages [Complaint, ¶ 23], non-economic, compensatory [Complaint, Summary], general and special damages, exemplary damages, attorney's fees [Complaint, Prayer ¶¶ 1-4.], and punitive damages. [Complaint, ¶¶ 24, 36, 43, 50, 56, 67, 74, 82, 88, 94, 102, 108, 115, 120, 129, 134, 142, and 148.]

(a)    Plaintiff alleges economic damages that she has and will continue to suffer. These damages include "lost past and future income and employment benefits, stock options, damage to her career, and lost wages, overtime, unpaid expenses, and penalties, as well as interest on unpaid wages at the legal rate from and after each payday on which those wages should have been paid." [Complaint, ¶ 23.]

(b)    Plaintiff alleges that Walmart terminated her employment on May 25, 2020 [Complaint 21.] At the time of her separation, Plaintiff earned $13.00 per hour and worked approximately 30 hours per pay period. Accordingly, Plaintiff's weekly pay averaged $390 ($13 per hour x 30 hours per week). If Plaintiff were to prevail on her claims, she could be entitled to lost earnings (e.g., back pay) of about $40,000 from her termination in May 2020 through the filing of her Complaint on May 10, 2022 – with that amount continuing to grow as litigation continues.

(c)    In addition, Plaintiff's lost earnings allegations do not contain a limit in their temporal scope. Front pay awards in California frequently span several years. *See Smith v. Brown-Forman Distillers Corp.* (1989)196 Cal. App. 3d 503, 518

---

[4] In the prayer for relief, Plaintiff states that "[t] The amount demanded exceeds $25,000.00." [Complaint, Prayer.]

**NOTICE OF REMOVAL FROM STATE COURT**

(front pay until mandatory retirement age reached); *Rabago-Alvarez v. Dart Indus., Inc.* (1976) 55 Cal. App. 3d 91, 97-98 (four years). Even conservatively estimating that Plaintiff seeks front pay benefits for only one year after the filing of her Complaint, the amount of future wages in controversy in this case would total more than $20,000.[5]

(d)     Plaintiff also alleges that she is entitled to general damages. [Complaint, Prayer, ¶ 1.] If Plaintiff were to prevail, she would most likely receive a non-nominal sum for emotional distress. Plaintiffs in employment cases have been awarded substantial sums for emotional distress. *See, e.g., Gardenhire v. Hous. Auth. of the City of Los Angeles* (2002) 85 Cal. App. 4th 236, 240-241 (affirming judgment, including jury award of $1.3 million in emotional distress damages for wrongful termination in violation of public policy claim); *Swinton v. Potomac Corp.* (9th Cir. 2001) 270 F.3d 794, cert. denied, 535 U.S. 1018 (2002) (award of $30,000), and *Redfield v. Ins. Co. of N. Am.* (9th Cir. 1991) 940 F.2d 542, overruled on other grounds, *Dotson v. United States* (5th Cir. 1996) 87 F.3d 682 (award of $25,000). Under the law, there is no precise measure of damages for emotional distress. Cal. Practice Guide: Emp't Litig., § 17:350, Rutter Grp. (2013). Nonetheless, a plaintiff is entitled to "a reasonable amount" to compensate for "'suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation, and shame'" that plaintiff has suffered and is "'reasonably certain to suffer'" in the future.[6] Id.; see also Cal. Civ. Code § 3283. The question a jury would be asked to determine in this case upon a finding of liability is

---

[5] Some of what is characterized as "front pay" herein would necessarily be "back pay" at the time of adjudication of Plaintiff's claims. *Lowe v. Cal. Res. Agency* (1991)1 Cal. App. 4th 1140, 1144 ("(B)ack pay refers to the amount that plaintiff would have earned but for the employer's unlawful conduct, minus the amount that plaintiff did earn or could have earned if he or she had mitigated the loss by seeking or securing other comparable employment."); *Pollard v. E.I. du Pont de Nemours & Co.* (2001)532 U.S. 843, 853 ("A front pay…award is the monetary equivalent of the equitable remedy of reinstatement.") Whether alleged lost wages for the months between the filing of Plaintiff's Complaint and trial is characterized as a "back pay" or "front pay" remedy, the total amount in controversy related to alleged wage loss remains the same.

[6] While there is no clearly established definition of "'reasonable certainty,' evidence of future detriment has been held sufficient based on expert medical opinion which considered the plaintiff's particular circumstances and the expert's experience with similar cases." *Bihun v. AT&T Info. Servs., Inc.* (1993)13 Cal. App. 4th 976, 995, overruled on other grounds by *Lakin v. Watkins Assoc. Indus.* (1993) 6 Cal.4th 644, 663.

**NOTICE OF REMOVAL FROM STATE COURT**

1   what is a "reasonable amount" to compensate for Plaintiff's emotional distress. For

2   purposes of jurisdiction, the question simply is how much in emotional distress

3   damages has Plaintiff placed in controversy. In *Kroske v. U.S. Bank Corp.* (9th Cir.

4   2005) 432 F.3d 976, *cert denied*, 127 S. Ct. 157 (2006), the plaintiff identified in

5   responses to interrogatories emotional distress as a category of damages she sought but

6   did not furnish the amount of such damages. The Ninth Circuit held that the district

7   court properly considered the interrogatory responses, along with emotional distress

8   damages awarded in similar age discrimination cases, in determining the amount in

9   controversy. In upholding the lower court's finding that the amount in controversy had

10  been established, the Ninth Circuit reasoned that the plaintiff's "emotional distress

11  damages would add at least an additional $25,000 to her claim" where she had only

12  $55,000 in lost wages, thus satisfying the amount in controversy requirement "even

13  without including a potential award of attorney's fees." *Id.* at 980.

14          (e)     Additionally, Plaintiff seeks attorney's fees. [Complaint, Prayer

15  ¶¶ 4.] The Ninth Circuit has held that "the amount in controversy includes all relief

16  claimed at the time of removal to which the plaintiff would be entitled if he prevails."

17  *Chavez v. JPMorgan Chase & Co.* (9th Cir. 2018)888 F.3d 413, 418. This amount

18  includes future attorney's fees. *See Fritsch v. Swift Transp. Co. of Ariz.* LLC (9th Cir.

19  2018) 899 F.3d 785, 794 ("there is no question that future [attorney's fees] are 'at stake'

20  in the litigation); *see also Schneider v. Ford Motor Co.* (9th Cir. 2018)759 Fed. Appx.

21  699, 701 n. 4. In determining whether the amount in controversy exceeds $75,000, the

22  Court may estimate the amount of reasonable attorney's fees likely to be recovered by

23  a plaintiff if she were to prevail on her claims. *See Brady v. Mercedes-Benz USA, Inc.*

24  (N.D. Cal. 2002) 243 F. Supp. 2d 1004, 1010-11. At an assumed rate of $300 per hour,

25  Plaintiff's counsel would need to spend only 250 hours of attorney time (a conservative

26  estimate of time spent through trial) to incur $75,000 in attorney's fees (250 x $300 =

27  $75,000). Moreover, attorney's fees awards in employment matters often exceed

28  $75,000. *See Flannery v. Prentice* (2001) 26 Cal.4th 572 (California Supreme Court

18

**NOTICE OF REMOVAL FROM STATE COURT**

upheld award of attorney's fees under FEHA for $891,042); *see also Rivera v. Costco Wholesale Corp.* (N.D. Cal. July 11, 2008, No. C 08-02202 CW) 2008 WL 2740399, at *12-13 (on denying motion for remand, court stated that "[e]mployment discrimination claims require a great deal of preparation and effort to maintain, and at Plaintiff's attorneys' claimed rate of $400 an hour, fees will likely become substantial") (citing *Simmons* (N.D. Cal. 2002) 209 F. Supp. 2d 1029, 1035 ("The court notes that in its twenty-plus years' experience, attorney's fees in individual discrimination cases often exceed the damages.")); *Akers v. Cty. of San Diego* (2002) 95 Cal. App. 4th 1441, 1453 (lower court awarded $249,349 in attorney's fees in wrongful termination in violation of public policy and discrimination case); *Hackmon v. City of Los Angeles* No. BC189418, 2001 WL 1860540 ($114,584 awarded in discrimination case brought under FEHA); *Kohn v. Cty. of Los Angeles* (Cal. Superior June 28, 2001, No. BC212273) 2001 WL 1720226 (awarding $161,700 in attorney's fees in FEHA discrimination case). Thus, the claimed attorney's fees award in this case could easily reach or exceed $75,000.

(f) Plaintiff also seeks to recover punitive damages. [Complaint, ¶¶ 24, 36, 43, 50, 56, 67, 74, 82, 88, 94, 102, 108, 115, 120, 129, 134, 142, and 148.] The potential punitive damages award in this case may satisfy the amount in controversy. California law does not provide any specific monetary limit on the punitive damages that may be awarded under Civil Code Section 3294. Punitive damages are included in calculating the amount in controversy. *Davenport v. Mut. Ben. Health & Acc. Ass'n* (9th Cir. 1963) 325 F. 2d 785, 787; *see also Aucina v. Amoco Oil Co.* (S.D. Iowa 1994) 871 F. Supp. 332. In *Aucina*, the defendant-employer established that the amount in controversy exceeded the jurisdictional minimum where the former employee asserted claims for lost wages, lost benefits, mental anguish, and punitive damages. The court noted that "[b]ecause the purpose of punitive damages is to capture a defendant's attention and deter others from similar conduct," the plaintiff's claim for punitive damages "might alone" exceed the jurisdictional minimum. *Aucina*, 871 F. Supp. at

19

**NOTICE OF REMOVAL FROM STATE COURT**

334. If Plaintiff were to prevail and establish the requisite state of mind, the punitive damages could exceed the jurisdictional minimum.

        (g)    Adding together Plaintiff's potential back pay damages, front pay damages, potential damages for emotional distress, potential punitive damages, and potential attorney's fees, the amount in controversy here easily exceeds $75,000, exclusive of interests and costs. Accordingly, the requisite amount in controversy for diversity actions set forth in 28 U.S.C. § 1332(a) is satisfied.

        WHEREFORE, the Action is hereby removed to this Court from the Superior Court of the State of California, County of Orange.

DATED: October 24, 2022        BUCHANAN INGERSOLL & ROONEY LLP

By: _____
       JASON E. MURTAGH
       MARY R. HACKETT
       KEVIN MAY
       Attorneys for Defendants
       WALMART, INC.; WAL-MART
       ASSOCIATES, INC.; DONALD
       SHUGART; and ELIZABETH DE GRACIA

**NOTICE OF REMOVAL FROM STATE COURT**